IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHANNON STEEDE,

                        Plaintiff,

v.

MIKE LEVY and DAVID BURDICK,

                        Defendants.

Case No. 25-2136-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Shannon Steede seeks a temporary restraining order following his removal as Chief Technology Officer (CTO) of Freight Logic, Inc. Defendants Mike Levy and David Burdick—Chief Operating Officer and President of Freight Logic, respectively—emailed plaintiff on March 19, 2025, to inform him of his removal. Doc. 6-3 at 1. Plaintiff contends his removal was unlawful because defendants didn't conduct a proper shareholder vote. Doc. 7 at 1. And so, he seeks immediate reinstatement to his CTO position. *Id.* Plaintiff also alleges defendants engaged in shareholder oppression, fraudulent misrepresentation, financial misconduct, and intellectual property misappropriation. *Id.* at 2–3. These acts, plaintiff argues, warrant a host of other emergency relief—such as installing plaintiff as CEO and freezing corporate assets while allowing plaintiff to maintain full control over all financial operations. *Id.* at 3.

At plaintiff's request, the court held a hearing on plaintiff's motion for a temporary restraining order on March 31, 2025. Three days later, plaintiff filed a Motion for Leave to File Supplemental Evidence (Doc. 45) and attached eight additional exhibits. The time for

defendants to respond to this supplemental motion hasn't expired, so the court withholds its ruling on that motion for now.  But the court has reviewed the supplemental evidence and finds it doesn't change the outcome here.

This Order rules plaintiff's Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing (Doc. 7) to the extent that motion requests a temporary restraining order.  The court concludes that plaintiff hasn't satisfied the requirements for the extraordinary relief provided by a temporary restraining order.  Specifically, plaintiff hasn't established substantial likelihood of success on the merits—a shortcoming independently sufficient for the court to deny his motion.  Plaintiff's motion also fails because it doesn't identify irreparable harm in the absence of a temporary restraining order.  So, the court denies plaintiff's Emergency Motion for Temporary Restraining Order (Doc. 7).  The court explains its ruling, below, beginning with the background facts.

I.      **Background**

Unless otherwise noted, the court takes the following facts from plaintiff's Amended Complaint (Doc. 6) and the documents attached to it.

*Plaintiff's Idea*

Plaintiff alleges that he conceived an idea to alter the freight industry by "creating an AI driven freight marketplace."  Pl. Ex. A3 (quotation cleaned up).  Plaintiff communicated this idea to a development firm, DreamzTech Solutions, in August 2023.  *Id.*  And text messages suggest plaintiff also presented this idea to defendant David Burdick around the same time.  *See* Doc. 6-5 at 5–6.  About six months later, plaintiff and defendants formed Freight Logic, Inc.  Doc. 6-1 at 1 (showing formation of Freight Logic, Inc. by Burdick, Levy, and Steede, filed with Kansas Secretary of State on January 31, 2024).  Freight Logic's vision was "to revolutionize the

fractured logistics industry through AI technology you can have a natural conversation with, in any language." Doc. 6-6 at 3 (quotation cleaned up).

### *Pre-Incorporation Founders' Agreement*

On February 10, 2024, plaintiff and defendants signed a Pre-Incorporation Founders' Agreement to found Freight Logic. Doc. 6-4 at 11. Schedule B of that agreement outlined the founders' roles and responsibilities. *Id.* at 8–10. It assigned David Burdick the role of President, Michael S. Levy the role of Chief Operating Officer, and Shannon M. Steede the role of Chief Technology Officer. *Id.* at 8–9. The agreement included a provision, relevant to plaintiff's financial misconduct claim, about reimbursements. It specified that "[e]ach Founder shall reimburse any Founder [who] incurs an expense related to the Startup proportionately to such Founder's Equity Cash Distribution." *Id.* at 3. And it required that the founders must approve in advance any such startup expenses over $1,000. *Id.*

The agreement also provided that each founder "shall contribute" a specified sum "towards the expenses of the Startup[.]" *Id.* at 3. It set forth those initial capital contributions in Schedule D, with plaintiff's contribution described as follows: "$100,000 CASH contribution within one year of incorporation" to "be reinvested into the company's operating budget." *Id.* at 10. The bylaws likewise provided that stock issuance would follow plaintiff's contribution of "$100,000 by 2/1/25." Doc. 6-2 at 3. At the hearing, defendants contended—and plaintiff confirmed—that plaintiff never paid the $100,000.

### *Plaintiff's Removal*

On March 19, 2025, plaintiff received an email from defendant Mike Levy advising that plaintiff had "been removed from the Board of Directors of Freight Logic, Inc. . . . effective immediately." Doc. 6-3 at 1. The email noted plaintiff's failure to invest $100,000 by February 1, 2025, as well as plaintiff's allegedly "destructive behavior" and "disruptive actions" that

3

"have placed Freight Logic, Inc. and its underlying technology in great peril." *Id.* Plaintiff alleges his removal was unlawful because it occurred "without a proper shareholder vote[.]" Doc. 6 at 1 (Am. Compl. ¶ I).

At the hearing, plaintiff identified a newly signed contract with CANACAR—a Mexican logistics company—as the impetus for his removal. According to plaintiff's AI-generated estimates, this CANACAR contract represents potential revenue totaling $1.5 million per day for freight moved within Mexico and another $1.5 million per day for cross-border shipping. Pl. Ex. A6. Plaintiff asserted at the hearing that defendants hoped to cut him off from this lucrative revenue stream and appropriate it for themselves.

On the day of his removal, plaintiff withdrew $69,230.80 from Freight Logic's Chase Bank account and attempted to transfer it to his own bank account. Def. Ex. 808. As of the hearing date, the bank had frozen the funds pending an investigation. So, according to the parties' representations at the hearing, those funds are neither in Freight Logic's account, nor has plaintiff received them.

*Plaintiff's Motion*

On March 20, 2025, plaintiff filed a lawsuit bringing claims against defendants premised on his alleged unlawful removal without a shareholder vote. Doc. 1 at 3 (Compl. ¶ III). He amended his Complaint the next day to include an Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing. Doc. 7. That Amended Complaint and Emergency Motion allege defendants unlawfully removed plaintiff and engaged in shareholder oppression, fraudulent misrepresentation, financial misconduct, and misappropriation of plaintiff's intellectual property. *Id.* at 1. Plaintiff asks the court to intervene to "reinstate his corporate position," *id.*, and provide several other forms of emergency relief, *id.*

4

at 3–4.  This Order decides just the part of plaintiff's filing seeking a temporary restraining order (TRO), starting with the legal standard to secure such relief.

## II.        Legal Standard

A party seeking a TRO must show:  (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the requested relief; (3) that its threatened injury without the restraining order outweighs the opposing party's injury under the restraining order; and (4) that the requested relief is not adverse to the public interest.  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

Preliminary relief—whether in the form of a TRO or a preliminary injunction—"is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation cleaned up) (preliminary injunction); *see also Heavy Petrol. Partners, LLC v. Atkins*, No. 09-1077-EFM-KMH, 2010 WL 11565423, at *2 (D. Kan. May 25, 2010) ("A temporary restraining order is an extraordinary remedy that is an exception rather than the rule, and courts do not grant it as a matter of right.").  The decision whether to issue "a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 906 (D. Kan. 1995).

A plaintiff must make a "clear and unequivocal showing" on all four requirements for preliminary relief.  *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (quotation cleaned up).  And, in our Circuit, when "the failure to satisfy one factor is dispositive, a court need not consider the other factors" for preliminary relief.  *See id.* at 890 (declining to consider the remaining factors where plaintiffs failed to show irreparable harm).  The court thus evaluates plaintiff's motion solely on the first two factors, though failure to show either one would foreclose relief.  Start with likelihood of success on the merits.

### III.     Analysis

#### A.     Likelihood of Success on the Merits

To secure a TRO, a party must first establish that it is substantially likely to succeed on the merits of his claim. *Mrs. Fields Franchising*, 941 F.3d at 1232. Though plaintiffs needn't "prove their likelihood of success beyond all doubt," they must show a reasonable probability of their eventual entitlement to relief on the merits. *Speight v. Gordon*, 582 F. Supp. 3d 897, 903 (D. Wyo. 2022) (citing *Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.2d 780, 781 (10th Cir. 1964) (per curiam)).

##### 1.     Plaintiff's First Request for Relief:  Reinstatement

Here, plaintiff hasn't established a substantial likelihood that he will succeed on the merits. Plaintiff premises his primary request for relief—reinstatement as CTO—on his position as a shareholder. Doc. 7 at 3. He alleges that as "an equal shareholder, director, and the inventor of the software and proprietary technology behind Freight Logic, Inc.," he "was unlawfully removed without a proper shareholder vote[.]" *Id.* at 1. He also alleges that defendants engaged in, among other things, "shareholder oppression[.]" *Id.* But at the hearing, defendants asserted that plaintiff was never a shareholder, and thus couldn't incur any shareholder injuries. They supported this assertion by identifying plaintiff's contractual agreement—in both the Pre-Incorporation Founders' Agreement and the adoption of Freight Logic's bylaws—to purchase shares with a cash contribution of $100,000. *See* Doc. 6-4 at 3, 10 (Founders' Agreement) (reciting capital contribution of "$100,000 CASH" for each founder and noting plaintiff's contribution due within one year of incorporation); Doc. 6-2 at 2–3 (Unanimous Written Consent Adopting Bylaws) (identifying plaintiff's contribution of $100,000 for 250,000 shares of stock due "by 2/1/2025"). At the hearing, defendants also admitted as evidence a letter written by plaintiff confirming that he has "no (zero) stakeholder interest in the company Freight Logic, Inc.

(dba TalkFreight.ai)." Def. Ex. 803.  And defendants noted, if plaintiff never acquired shareholder status, but merely served as an officer and at-will employee, then the bylaws permit removal of "any officer with or without cause at any time"—no shareholder vote required.  Doc. 6-2 at 15.

To his credit, plaintiff readily conceded he hadn't contributed $100,000.  But he still held shares, he argued at the hearing, because he contributed intellectual property that has non-monetary value.  Unfortunately for plaintiff, the agreement he signed specified (in capital letters, no less) that he had to contribute "CASH."  *See* Doc. 6-4 at 10.  And so, plaintiff hasn't demonstrated he is substantially likely to succeed on the merits of any claim premised on his position as a shareholder.

## 2. Plaintiff's Other Requests for Relief

Plaintiff premises his other requests for emergency relief on defendants' alleged "fraudulent misrepresentation," "financial misconduct," and "misappropriation of Plaintiff's intellectual property[.]" Doc. 7 at 1.  But these requests for relief require an even stronger showing of likely success on the merits.  That's so because these other requests, if granted, would alter the status quo.

The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy."  *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014).  Plaintiff asks the court for the following other relief:  install plaintiff as CEO; freeze corporate assets "while allowing Plaintiff to maintain full control over all aspects of financial operations[;]" compel defendants to disclose all corporate records; prohibit defendants from contacting vendors or investors; award plaintiff one-third of projected profits for the next five years; remove defendants from any managerial, operational, or financial roles in the company; suspend defendants salaries, compensation, and distributions; order

7

judicial removal of defendants under Kansas law for gross financial mismanagement; and order an investigation into defendants' alleged misrepresentations to customers. Doc. 7 at 3–4. None of these requests qualify as status quo relief because none would restore a position or state of affairs that ever has existed.

Requests for relief that alter the status quo are disfavored at this stage of litigation. "Three types of preliminary injunctions are disfavored and require a movant to meet a heightened standard before a preliminary injunction may issue." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 n.15 (10th Cir. 2017) (quotation cleaned up). "They are '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012)). A motion that fits into one of these categories "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc). And so, when "seeking such an injunction [the movant] must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms[.]" *Id.* at 976.

Here, plaintiff hasn't established a substantial likelihood of success on the merits of his claims premised on fraudulent misrepresentation, financial mismanagement, and intellectual property misappropriation. To substantiate his claim of fraudulent misrepresentation, plaintiff submitted an exhibit with yellow highlights to indicate alleged embellishments made by "Speaker 4." Pl. Ex. A7. Plaintiff identified "Speaker 4" as defendant David Burdick. But

plaintiff didn't provide the court with enough context about the technology at issue to evaluate—based on these highlighted sections—whether these statements constitute fraudulent misrepresentation. So, at this early stage, the court can't conclude that plaintiff is substantially likely to succeed on the merits of that claim.

Likewise, plaintiff alleges defendants engaged in financial misconduct and identifies, for example, transactions exceeding $1,000 allegedly authorized improperly by Levy, "without the required approval of all partners." Doc. 7 at 2. But plaintiff didn't present any evidence of these alleged transactions at the hearing. Indeed, the only evidence of a unilateral transaction presented at the hearing was plaintiff's own withdrawal of $69,230.80 from Freight Logic's Chase Bank account on March 19, 2025, the day of his removal. Def. Ex. 808. Three days after the hearing, plaintiff filed a Motion for Leave to File Supplemental Evidence in support of his TRO motion. Doc. 45. And plaintiff filed eight additional exhibits, one of which purports to demonstrate Levy's transactions exceeding $1,000. *See* Doc. 45-2. The court has reviewed the transactions, and only three of them are attributed to Levy, with the rest attributed to Freight Logic, Inc. generally. *See id.* at 2–11.

But even accounting for these three transactions, the court still can't conclude plaintiff is substantially likely to succeed on the merits of his financial misconduct claim. Plaintiff never identifies where precisely the corporate documents purportedly memorialize the $1,000 threshold. *See* Doc. 7 at 2 ("Defendant Mike Levy engaged in financial misconduct by authorizing transactions exceeding the $1,000 threshold outlined in the corporate governance documents, without the required approval of all partners."). The court's review of the founders' agreement and the bylaws turned up only one provision establishing a $1,000 cap. *See* Doc. 6-4 at 3. But that cap specifically applies to founders seeking reimbursement for startup expenses

incurred. And plaintiff provides no evidence suggesting these three transactions by Levy fall into the reimbursable expenses category. And even if he had done so, plaintiff offers no argument to establish that such a violation of this founders' agreement provision qualifies as actionable financial misconduct. Without sufficient evidence to substantiate defendants' financial misconduct, the court can't conclude that plaintiff holds a substantial likelihood of success on the merits.

Finally, plaintiff contends that defendants misappropriated his intellectual property. Doc. 7 at 1. But the founders' agreement provides for transfer from each founder of all "right, title, and interest in and to the Product or Service (including all right, title and interest to intellectual property and all applications thereto)" to the corporation. Doc. 6-4 at 4. To be sure, the founders' agreement stipulates that such transfer "shall be made pursuant to a customary confidentiality and intellectual property assignment agreement," *id.*, which plaintiff contends never materialized. But he provides no evidence to support this contention. What's more, defendants submitted evidence at the hearing demonstrating more than $250,000 in payments to a company employed to develop plaintiff's initial concept. *See* Def. Ex. 819 (showing repeated payments to Krish Ghosh, who defendants represented was the payee at DreamzTech Solutions, totaling $286,625). The court thus remains uncertain about the exact property that plaintiff alleges defendants purportedly misappropriated, and to whom that property belongs. And plaintiff's supplemental evidence of communications with DreamzTech Solutions doesn't cure that problem. *See* Doc. 45-5 at 1–7. So, at this early stage in the litigation—and applying the requisite heightened standard—the court can't conclude that plaintiff has a substantial likelihood of succeeding on his intellectual property claim, either.

Given the dearth of evidence to support plaintiff's misrepresentation, misconduct, and misappropriation claims at this stage—combined with the heightened showing required for relief that would alter the status quo—the court denies plaintiff his requested relief. The court turns next to an independently sufficient alternative reason to deny plaintiff's motion: irreparable harm.

### B.     Irreparable Harm

To merit a TRO, the requesting party also must establish that it will suffer irreparable injury if the court denies the requested relief. *Mrs. Fields Franchising*, 941 F.3d at 1232. Irreparable harm "'does not readily lend itself to definition.'" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). And proving irreparable harm is not "'an easy burden to fulfill.'" *Id.* (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "Irreparable harm is not harm that is merely serious or substantial." *Id.* (citations and internal quotation marks omitted).

A party seeking interim relief establishes irreparable harm by demonstrating "'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone*, 321 F.3d at 1258). A party may establish irreparable harm by "such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position." *Dominion Video*, 356 F.3d at 1264; *see also Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197,

1205 (D. Kan. 2003) ("Loss of customers, loss of goodwill, and threats to a business's viability can constitute irreparable harm." (quotation cleaned up)).

Plaintiff's motion here recites harms he alleges would occur without "an emergency court order." Doc. 7 at 3. He alleges that "the company risks severe financial instability, reputational damage, and operational collapse." *Id.* (quotation cleaned up). Such harms likely align with the "intangible harms" identified as irreparable by *Dominion Video*, 356 F.3d at 1264. But here's the problem: Those harms all affected *Freight Logic*, not plaintiff. His motion also alleges a risk of defendants "making disparaging comments" about plaintiff. Doc. 7 at 3. But that risk, too, he expresses in the context of harms to Freight Logic, not plaintiff himself. *Id.* The motion explains that those disparaging comments threaten "the company's business relationships" and "an orderly transition." *Id.* Again, plaintiff himself thus doesn't incur these harms.

When the court asked plaintiff at the hearing to identify any irreparable harms, plaintiff noted his hard work on the technology concept Freight Logic offers to its customers. And he explained that his labor just started bearing fruit in the form of a multimillion-dollar contract with CANACAR. He thus argued that he should get the fruits of his labor. But this fruit-of-his-labor harm falls squarely within the category of harms compensable by monetary damages. And *RoDa Drilling* exempts such compensable injuries from qualifying as an irreparable harm at the TRO stage. 552 F.3d at 1210.

When pressed again by the court to identify any harm that later money damages couldn't remedy, plaintiff explained that irreparable harm already had occurred: he's not receiving a paycheck anymore. While his business partners own other ventures, this company is all plaintiff has; it is his livelihood, he expounded. Plaintiff also elaborated on his belief that his former business partners are painting him in a bad light so that they won't have to share the influx of

revenue from the CANACAR contract. And in his supplemental evidence, plaintiff explained that he faces irreparable harm but that "[d]efendants suffer no comparable risk as they maintain other income sources." Doc. 45-1 at 2. Such irreparable harm assertions presume income or profit loss suffice to satisfy irreparable harm. But loss of his salary and potential profit from a contract are monetary. And under Tenth Circuit precedent, such monetary damages don't qualify as irreparable harm. *RoDa Drilling*, 552 F.3d at 1210.

The court can't conclude—based on any of these allegations—that money damages at a later date wouldn't make plaintiff whole for any actual injury he might sustain. And so, plaintiff's motion fails on the second element to qualify for a temporary restraining order, as well. Having evaluated two independently sufficient reasons to deny plaintiff's motion, the court needn't reach the third and fourth TRO requisites and declines to do so.

## IV.    Conclusion

Plaintiff's motion fails to establish a substantial likelihood of success on the merits and, independently, irreparable harm if the court doesn't grant emergency relief. And so, the court concludes plaintiff isn't entitled to a temporary restraining order. As a housekeeping matter, the court also admits one exhibit offered by plaintiff and on which the court withheld judgment at the March 31, 2025 hearing.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the temporary restraining order portion of plaintiff's Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing (Doc. 7) is denied. The portion of plaintiff's motion requesting an expedited hearing was granted by the hearing the court held on March 31, 2025. The portion of plaintiff's motion requesting a preliminary injunction remains pending.

**IT IS FURTHER ORDERED THAT** plaintiff's exhibit A1, offered at the March 31, 2025 hearing, is admitted.

**IT IS SO ORDERED.**

**Dated this 7th day of April, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
